```
                              UNITED STATES DISTRICT COURT
                                DISTRICT OF CONNECTICUT

------------------------------X
                              :
ADAM TAYLOR                   :    Civil No. 3:21CV00623(SALM)
                              :
v.                            :
                              :
ABHILASH PILLAI, JEFFREY      :
MOODY, CHRISTOPHER REEDER,    :
and JEFFREY POULIN            :    September 6, 2022
                              :
------------------------------X
```

**RULING ON RENEWED MOTION TO DISMISS [Doc. #41]**

Defendant Jeffrey Poulin ("Poulin") has filed a renewed motion to dismiss the Fifth Count of plaintiff Adam Taylor's ("plaintiff") Second Amended Complaint. See Doc. #41. Plaintiff has filed an objection to Poulin's motion, see Docs. #27, #44, to which Poulin has filed a reply, see Doc. #28. For the reasons stated herein, defendant Poulin's Motion to Dismiss [**Doc. #41**] is **DENIED**.

**I.   LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted); accord Kaplan v. Lebanese Canadian Bank, SAL, 999 F.3d 842, 854 (2d Cir. 2021). In reviewing such a motion, the Court "must accept as true all nonconclusory factual allegations in the

complaint and draw all reasonable inferences in the Plaintiffs' favor." Kaplan, 999 F.3d at 854 (citations omitted).

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." Conn. Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc., 988 F.3d 127, 131-32 (2d Cir. 2021) (citation and quotation marks omitted).

## II.  BACKGROUND

On May 16, 2018, plaintiff was involved in an incident which ended in the shooting of plaintiff by law enforcement officers. See generally Doc. #40. Plaintiff alleges, in relevant part, that Poulin (a federal officer) "discharged his firearm twice and shot through the windshield of [plaintiff's] car, striking [plaintiff] twice, once in each of his arms." Id. at 6, ¶14; see also id. at 2, ¶4.[1] Plaintiff asserts one count against Poulin for excessive force in violation of the Fourth Amendment pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). See Doc. #40 at 6.

Plaintiff filed the Complaint on May 5, 2021, against City of Hartford police officers Jeffrey Moody, Abhilash Pillai, and

---

[1] Plaintiff also alleges that Abhilash Pillai, a City of Hartford police officer, "discharged his firearm twice and shot through the windshield of [plaintiff's] car, striking [plaintiff] twice, once in each of his arms." Doc. #40 at 3, ¶14.

Christopher Reeder. See Doc. #1. On September 7, 2021, plaintiff filed an Amended Complaint, adding Poulin as a defendant. See Doc. #11. On January 7, 2022, Poulin filed a motion to dismiss all claims against Poulin as time-barred. See Doc. #23. The Court denied that motion, without prejudice to-refiling, after permitting plaintiff to file a Second Amended Complaint. See Docs. #37, #39.

Plaintiff filed the Second Amended Complaint on March 2, 2022. See Doc. #40. On the same date, Poulin filed a renewed motion to dismiss the claim asserted against him in the Second Amended Complaint. See Doc. #41. The basis for the renewed motion to dismiss "is the same as" that asserted in Poulin's January 7, 2022, motion to dismiss. Id. at 1.

### III. DISCUSSION

Poulin asserts that Count Five is "time-barred because [it was] first filed on September 7, 2021, months after the applicable three-year statute of limitations expired on May 16, 2021." Doc. #23 at 2. Poulin further asserts that plaintiff's claim does "not qualify for relation back based" on a mistake because the "failure to timely assert claims against Defendant Poulin ... resulted from a lack of knowledge[.]" Id.

Plaintiff "agrees ... that the limitations period for this claim" is three years. Doc. #27 at 2. However, plaintiff asserts that his claim against Poulin is timely because of "Governor Ned

Lamont's suspension of Connecticut's statutes of limitations between March 2020 and March 2021 in response to the COVID-19 pandemic." Id.

In reply, Poulin contends that Governor Lamont's Executive Order did not "effect a true tolling of the running of all civil statutes of limitations[,]" but rather served as "a mere temporary suspension of enforcement of the civil statutes of limitations in Connecticut for an emergency period[.]" Doc. #28 at 3. Poulin asserts that (1) "Plaintiff misinterprets Governor Lamont's Executive Orders[,]" id. at 2; (2) a Connecticut Superior Court decision supporting plaintiff's position is "wrongly decided[,]" id. at 5; and (3) "Plaintiff's failure to timely assert claims against Defendant Poulin in this case has nothing to do with the COVID-19 pandemic[,]" id. at 8.

There is no dispute that the statute of limitations for a Bivens action arising in Connecticut is three years. See Bakowski v. Kurimai, 387 F. App'x 10, 11 (2d Cir. 2003). There is also no dispute that plaintiff's Bivens claim against Poulin arose on May 16, 2018, meaning the applicable statute of limitations expired on May 16, 2021. Plaintiff added Poulin as a defendant on September 7, 2021. See Doc. #11. Thus, the claim against Poulin appears untimely on its face because it was brought outside the three year limitation period. However, "state tolling rules determine whether the limitations period

~ 4 ~

has been tolled[]" in Bivens actions. Griffin v. Doe, 71 F. Supp. 3d 306, 317 (N.D.N.Y. 2014).

The Court must therefore determine whether Governor Lamont's Executive Orders tolled the applicable state statute of limitations. The Connecticut Supreme and Appellate Courts have not yet addressed this issue. Accordingly, the Court "must endeavor, in the first instance, to predict how" the Connecticut Supreme Court would decide the issue. Khan v. Yale Univ., 27 F.4th 805, 818 (2d Cir. 2022) (citation and quotation marks omitted); see also Giuffre Hyundai, Ltd. v. Hyundai Motor Am., 756 F.3d 204, 209 (2d Cir. 2014). "Toward that end, we consider the highest court's decisions in related cases, as well as relevant decisions of the state's lower courts and of other jurisdictions." Khan, 27 F.4th at 818. "Where the high court has not spoken, the best indicators of how it would decide are often the decisions of lower ... courts." McCarthy v. Olin Corp., 119 F.3d 148, 153 (2d Cir. 1997) (citation and quotation marks omitted).[2]

A.  The Executive Orders

"On March 10, 2020, in response to the global pandemic of COVID-19, Governor Lamont declared a public health emergency and

---

[2] Defendant does not contest the applicability of Connecticut state law to the issue of whether the Executive Orders effected a tolling of the statute of limitations.

civil preparedness emergency throughout the state, pursuant to General Statutes §§9a-131a and 28-9[.]" Casey v. Lamont, 258 A.3d 647, 651 (Conn. 2021) (citation and quotation marks omitted). "Following Governor Lamont's declaration of the public health and civil preparedness emergencies, he promulgated a series of executive orders in an attempt to contain and mitigate the spread of COVID-19." Id. at 652.

On March 19, 2020, Governor Lamont issued Executive Order 7G, which provides, in relevant part:

> **Suspension of Non-Critical Court Operations and Associated Requirements.** Notwithstanding any provision of the Connecticut Statutes or of any regulation, local rule or other provision of law, I hereby suspend, for the duration of this public health and civil preparedness emergency, unless earlier modified or terminated by me, all statutory (1) location or venue requirements; (2) time requirements, statutes of limitation or other limitations or deadlines relating to service of process, court proceedings or court filings; and (3) all time requirements or deadlines related to the Supreme, Appellate and Superior courts or their judicial officials to issue notices, hold court, hear matters and/or render decisions including, but not limited to, the following:
>
> ...
>
> e. All statutes of limitations provided in Chapter 926 of the General Statutes[.]

Executive Order 7G (March 19, 2020).[3]

---

[3] Available at https://portal.ct.gov/-/media/Office-of-the-Governor/Executive-Orders/Lamont-Executive-Orders/Executive-Order-No-7G.pdf.

On February 8, 2021, Governor Lamont issued Executive Order 10A, which provides, in relevant part, that "the provisions of Executive Order No. 7G, Section 2, dated March 19, 2020," as they relate to "all statutory requirements, statutes of limitation or other limitations or deadlines relating to service of process, court proceedings or court filings in civil matters[,]" "shall expire on March 1, 2021[.]" Executive Order 10A (Feb. 8, 2021).[4]

The Court takes judicial notice of the Executive Orders published by the State of Connecticut's official online portal. See Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); accord Connelly v. Komm, No. 3:20CV01060(JCH), 2021 WL 5359738, at *3 n.3 (D. Conn. Nov. 16, 2021).

B.   Analysis

Poulin contends that Executive Order 7G does not "toll" the statute of limitations. Doc. #28 at 4. Relying on the "plain language" of the Executive Orders, Poulin asserts: "Governor

---

[4] Available at https://portal.ct.gov/-/media/Office-of-the-Governor/Executive-Orders/Lamont-Executive-Orders/Executive-Order-No-10A.pdf.

Lamont uses the word 'suspended' to 'suspend' the civil statutes of limitations and other state court time requirements; and the word 'toll' appears nowhere in either Executive Order 7G or 10A, despite that Governor Lamont used the word 'toll' in other similar orders[.]" Doc. #28 at 4; see also id. at 5-7.

The Connecticut Superior Courts addressing this issue disagree with Poulin's interpretation of the Executive Orders, and have rejected these arguments. For example, in Capua v. Hill, No. HHD-CV-21-6140492-S, 2021 WL 4906017 (Conn. Super. Ct. Sept. 24, 2021), which Poulin believes is "wrongly decided[,]" Doc. #28 at 5, the Superior Court addressed "what appear[ed] to be an issue of first impression regarding the proper interpretation and application of Governor Lamont's Executive Orders addressing the COVID-19 pandemic as they relate to the statutes of limitation applicable to civil actions." Id. at *1. In Capua, the plaintiff was injured in an automobile accident on February 12, 2019, but did not serve the defendant until April 3, 2021, more than two years after the date of plaintiff's injury. See id. The defendant in Capua, like Poulin here, asserted that "Executive Order 7G suspended the enforcement or application of the statute of limitations but did not toll the running of the statute of limitations during the suspension period." Id. at *2. The Superior Court rejected this argument, persuasively noting the several instances where the Connecticut

"Supreme Court has used the terms 'toll' and 'suspend' interchangeably when discussing statutes of limitation." Id.; see also id. ("[T]he Supreme Court has defined tolling as a suspension of the statute of limitations.").

Other Connecticut Superior Courts have also rejected similar arguments, and have found that the "plain" text of the Executive Order supports the interpretation applied by the Capua decision:

> The plain text of Executive Order 7G, ¶2(e) is addressed to the suspension of time limitations. Any time limitations that were in effect when Executive Order 7G was issued were suspended from March 19, 2020, until March 1, 2021, when Executive Order 10A rescinded Executive Order 7G. Accordingly, any time limitations that were suspended during that nearly one-year period resumed from the point where they had been paused[.]

Kuselias v. Zingaro & Cretella, LLC, No. NNH-CV-21-6116386-S, 2022 WL 3719214, at *10 (Conn. Super. Ct. Aug. 29, 2022) (citations and quotation marks omitted); see also DeMatteo v. 65 Messina Drive, LLC, No. NNH-CV-20-6106442, 2021 WL 4898219, at *5 (Conn. Super. Ct. Sept. 15, 2021) (applying the "plain language" of Executive Order 7G to "extend" the time limitations for the filing of an apportionment complaint).

The Capua decision also rejected the argument advanced by Poulin "that the word 'toll' in other of Governor Lamont's Executive Orders demonstrates that the use of 'suspend' in Executive Order 7G was intended to mean something other than

~ 9 ~

'toll.'" Id. The Superior Court ultimately concluded "that Executive Order 7G interrupted the running of the two-year statute of limitations applicable to the plaintiff's negligence claim such that, when the suspension terminated as of March 1, 2021, the plaintiff had some 329 days within which to commence her action." Id. at *3 (footnote omitted) (emphasis added).

Since Capua, "[a] number of Superior Courts have considered the effect of these executive orders on various statutory time limitations. These decisions hold that [Executive Order] 7G temporarily suspended all statutory deadlines relating to service of process, court proceedings, or filings until the suspension was lifted by [Executive Order] 10A." Lindquist v. Wessels, No. HHB-CV-21-6066073, 2022 WL 1060736, at *1 (Conn. Super. Ct. Mar. 3, 2022) (citation and quotation marks omitted); see also 2149 Realty Assocs., LLC v. Eversource Energy Serv. Co., No. HHD-CV-20-6134871-S, 2022 WL 2297871, at *1 (Conn. Super. Ct. June 23, 2022) ("Other Superior Court decisions are consistent with Capua."); Kuselias, 2022 WL 3719214, at *9 ("A search of the case law interpreting Executive Order 7G does not reveal on-point appellate authority. The weight of Superior Court authority recognizes that Executive Order 7G temporarily suspended all statutory deadlines relating to filings until the suspension was lifted by Executive Order 10A." (citation and quotation marks omitted)).

Thus, "[a]ny time limitations that were in effect when [Executive Order] 7G was issued were suspended from March 19, 2020, until March 1, 2021, when [Executive Order] 10A rescinded [Executive Order] 7G. Accordingly, any time limitations that were suspended during that nearly one-year period resumed from the point where they had been paused by [Executive Order] 7G." Krzeminski v. Duby, No. HHD-CV-216140073-S, 2022 WL 374845, at *2 (Conn. Super. Ct. Jan. 24, 2022). The Court is persuaded by this unanimous line of decisions that Executive Order 7G served to "interrupt" or "pause" any statute of limitation that would have otherwise been running during the applicable period. See also Connelly, 2021 WL 5359738, at *4 ("This court will follow the lead of its sister courts, borrowing the tolling provision set forth in Executive Order 7G[,]" for claims asserted pursuant to 42 U.S.C. §1983.).

Poulin next asserts: "It bears emphasis that Plaintiff's failure to timely assert claims against Defendant Poulin in this case has nothing to do with the COVID-19 pandemic." Doc. #28 at 8. This is not relevant to the Court's analysis. "[T]he court is unaware of any limitation on the Executive Order that hinges on the plaintiff's motivations." Medina v. Haun, No. TTD-CV-21-6021854-S, 2022 WL 294327, at *3 (Conn. Super. Ct. Jan. 14, 2022). To reiterate: "Any time limitations that were in effect when Executive Order 7G was issued were suspended from March 19,

2020, until March 1, 2021, when Executive Order 10A rescinded Executive Order 7G." Kuselias, 2022 WL 3719214, at *10 (citations and quotation marks omitted) (emphasis added). "In other words, the Executive Order either applies, or it does not." Medina, 2022 WL 294327, at *3. Here, it applies.

Finally, Poulin summarily argues: "Alternatively, if Court is inclined to adopt Plaintiff's reading of Executive Orders 7G and 10A, Defendant's position is that those orders contravene the Governor's limited authority under Section 28-9(b)(1)[.]" Doc. #28 at 9 (sic). Connecticut courts have rejected similar arguments, finding that Governor Lamont properly exercised his powers as delegated to him by the legislature. See In re Jacob M., 255 A.3d 918, 928 (Conn. App. 2021) ("Pursuant to the authority given to the governor by the legislature in §28-9, the governor's suspension in paragraph 2(c) of Executive Order No. 7G of the time limitation in §51-183b was not inconsistent with the constitutional principle that the General Assembly cannot delegate its lawmaking power. The General Assembly exercised its legislative power when it decided that the governor could suspend statutes that conflict with civil preparedness or public health upon the governor's ascertaining and declaring of the existence of a particular contingency."), cert. denied, 253 A.3d 43 (Conn. 2021); accord Gerald Metals, LLC v. Davidson, No. 3:20CV00686(JCH), 2021 WL 4993084, at *5 (D. Conn. Oct. 27,

2021) ("In response to the COVID-19 pandemic, Governor Lamont properly exercised powers delegated to him by the legislature, issuing executive orders within his broad statutory and constitutional authority, including Executive Order 7G." (citation and quotation marks omitted)). Given the perfunctory manner in which Poulin raised this argument, the Court otherwise declines to address the substance of this argument.

Accordingly, the Court concurs with the Connecticut Superior Courts that Executive Order 7G effectively "paused" the applicable statute of limitations on March 19, 2020, and such time periods thereafter "resumed from the point where they had been paused[.]" Kuselias, 2022 WL 3719214, at *10 (citation and quotation marks omitted). Plaintiff had three years, or 1,096 days, from May 16, 2018, to file his claim against Poulin. When the statute of limitations "paused" on March 19, 2020, plaintiff had 424 days "remaining on the statute of limitations when the clock started re-running on March 1, 2021." Lindquist, 2022 WL 1060736, at *2. Thus, the new applicable limitations date became April 29, 2022. Plaintiff brought his claim against Poulin on September 7, 2021. See Doc. #11. Accordingly, applying Executive Orders 7G and 10A, plaintiff's claims against Poulin are not untimely.

However, the Court's analysis does not end there. The Court is to apply the state's tolling rules "unless applying the

state's tolling rules would defeat the goals of the federal statute at issue[.]" Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002) (citation and quotation marks omitted); accord Harrison v. Lutheran Med. Ctr., 468 F. App'x 33, 36 (2d Cir. 2012) (applying state tolling rules to claims asserted pursuant to section 1983 and Bivens).

"In the limited settings where Bivens does apply, the implied cause of action is the federal analog to suits brought against state officials under Rev. Stat. §1979, 42 U.S.C. §1983." Iqbal, 556 U.S. at 675-76 (citation and quotation marks omitted). Thus, the policies underlying section 1983 claims would also underly a claim asserted pursuant to Bivens.

"The policies underlying section 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." Connelly, 2021 WL 5359738, at *4. Applying Executive Order 7G to plaintiff's claim against Poulin furthers these policies by giving plaintiff his day in court to seek compensation for the alleged use of excessive force by Poulin. It also furthers the goal of deterring abuses of power by federal officials. See id. Finally, "borrowing the tolling rule established in Governor Lamont's Executive Order comports with principles of federalism, as the court will apply Connecticut's state tolling policy rather than adopting its own ad hoc federal

rule interpreting state law." Id. (citation and quotation marks omitted).

Thus, because the Court predicts that the Connecticut Supreme Court would find that Executive Order 7G suspended the applicable statute of limitation for plaintiff's claim against Poulin, plaintiff's claim is timely and will not be dismissed.

**IV. CONCLUSION**

For the reasons set forth herein, defendant Poulin's Motion to Dismiss [**Doc. #41**] is **DENIED**.

It is so ordered at Bridgeport, Connecticut, this 6th day of September, 2022.

/s/
HON. SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE
